JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
GREGORY W. WOJYN

**DEFENDANTS**
BOROUGH OF ENGLISHTOWN, DANIEL FRANCISCO,CYNTHIA BUCKEL,TREVOR MARTINSON, AND ALEX DINICOLA

**(b)** County of Residence of First Listed Plaintiff ____________
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ____________
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew B. Weisberg, Esquire and Gary Schafkopf, Esquire
Weisberg Law - 7 South Morton Ave. Morton, PA 19070
610-690-0801

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. § 1983; N.J.S.A. 10:6-2

Brief description of cause:
Retaliatory extreme risk protective order and firearms seizure in violation of civil rights.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE ____________ DOCKET NUMBER ____________

DATE
10/14/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**GREGORY W. WOJYN**
6 Northgate Drive
Englishtown, NJ 07726

Plaintiff,

**v.**

**BOROUGH OF ENGLISHTOWN**
15 Main St.
Englishtown, NJ 07726

And

**DANIEL FRANCISCO, individually and in his official capacity as Mayor of the Borough of Englishtown,**
c/o Englishtown Borough Hall
15 Main St.
Englishtown, NJ 07726

And

**CYNTHIA BUCKEL, individually and in her official capacity as a Detective of the Englishtown Police Department**
c/o Englishtown Police Department
15 Main St.
Englishtown, NJ 07726

And

**TREVOR MARTINSON, individually and in his official capacity as Chief of Police of the Englishtown Police Department**
c/o Englishtown Police Department
15 Main St.
Englishtown, NJ 07726

And

**ALEX DiNICOLA, individually and in his official capacity as Captain of the Englishtown Police Department,**
c/o Englishtown Police Department,

Civil Action No.

**JURY TRIAL DEMANDED**

15 Main St. :
Englishtown, NJ 07726 :
:
Defendants. :

---

**CIVIL ACTION COMPLAINT**

## I. JURISDICTION & VENUE

1. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), as this action arises under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. This Honorable Court has supplemental jurisdiction over Plaintiff's related state law claims, including his claims under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, and his common law claims, pursuant to 28 U.S.C. § 1367(a), as those claims arise from the same case or controversy as Plaintiff's federal claims.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred in Monmouth County, New Jersey, within this District, and Defendant, Borough of Englishtown is located within this District.

## II. PARTIES

4. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

5. Plaintiff, Mr. Wojyn, is an adult individual currently residing at the above-captioned address in Englishtown, New Jersey. Plaintiff is a United States Navy veteran, a former Police Commissioner of the Borough of Englishtown, and a former thirteen-year member and President of the Englishtown Borough Council.

6. Defendant, Borough of Englishtown, is a municipal corporation organized under the laws of the State of New Jersey, located in Monmouth County, and is responsible for the policies,

customs, practices, training, and supervision of the Englishtown Police Department and the official conduct of the Mayor of Englishtown.

7. Defendant, Francisco, is, upon information and belief, an adult individual who at all material times served as Mayor of the Borough of Englishtown. Defendant, Francisco is sued in his individual capacity and in his official capacity as a final policymaker for the Borough. At all material times, Defendant, Francisco acted under color of state law.

8. Defendant, Buckel, is, upon information and belief, an adult individual who at all material times served as a Detective with the Englishtown Police Department. Defendant, Buckel is sued in her individual and official capacities. At all material times, Defendant, Buckel acted under color of state law.

9. Defendant, Martinson, is, upon information and belief, an adult individual who at all material times served as Chief of Police of the Englishtown Police Department. Defendant, Martinson is sued in his individual and official capacities. At all material times, Defendant, Martinson acted under color of state law.

10. Defendant, DiNicola, is, upon information and belief, an adult individual who at all material times served as a Captain with the Englishtown Police Department. Defendant, DiNicola is sued in his individual and official capacities. At all material times, Defendant, DiNicola acted under color of state law.

11. Defendants, John Does 1–10, are individuals presently unknown to Plaintiff whose acts or omissions contributed to the violations described herein. Plaintiff will amend this Complaint to state their true names and capacities when ascertained.

## III. Operative Facts

12. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

13. Plaintiff served as an Englishtown Borough Councilman and Council President for thirteen years, from 2009 to 2022, and separately served as the Borough's Police Commissioner, in which capacity Plaintiff personally swore Defendant, Buckel into her position as a full-time police officer in 2021.

14. Beginning in or about 2022, Plaintiff became a corroborating witness and source of evidence in litigation and administrative proceedings alleging misconduct by then-Chief of Police Peter S. Cooke, Jr. and then-Councilman (later Mayor), Defendant, Francisco, including their roles in the wrongful termination of former Borough Clerk Gretchen McCarthy.

15. In or about May 2022, Defendant, Francisco engaged in online harassment of Plaintiff and Plaintiff's wife, knowingly publishing false statements that Plaintiff was illegally campaigning for the June 2022 primary election.

16. On or about June 4–7, 2022, Defendant, Francisco published a multi-paragraph defamatory attack against Plaintiff and Plaintiff's wife on the "Englishtown Residents" Facebook page, accusing them of cowardice for not responding, posting copies of Plaintiff's signed campaign documents, publishing Plaintiff's home address, and disclosing the identity of Plaintiff's next-door neighbor. Upon information and belief, this post was "liked" by then-Chief Cooke and by then-Councilman William Lewis, both of whom were Facebook "friends" of Defendant, Francisco.

17. On or about July 2, 2022, Defendant, Francisco harassed Plaintiff and Plaintiff's wife outside the Baklava Lady bakery, 34 Main Street, Englishtown, New Jersey, making unwanted verbal contact and telling Plaintiff he would be "taken out by December."

18. Plaintiff resigned from the Borough Council on or about August 1, 2022, in substantial part out of fear arising from this sustained harassment campaign conducted by Defendant, Francisco and former Chief Cooke.

19. In or about mid-September 2022, Defendant, Francisco again attempted to instigate a physical altercation with Plaintiff at Ristorante Maietta, 11 Tennent Avenue, Englishtown, New Jersey. Defendant, Francisco desisted only when Plaintiff began recording him on his cell phone. Plaintiff was afraid that Defendant, Francisco was carrying a firearm at the time.

20. In McCarthy v. Borough of Englishtown, Chief of Police Peter Cooke, Jr., Docket No. MON-L-003567-23 (filed November 9, 2023), Plaintiff submitted a detailed affidavit, dated on or about February 1, 2025, in support of former Borough Clerk Gretchen McCarthy's claims. That matter settled on or about March 17, 2025 for approximately $212,500, and Plaintiff's affidavit and testimony were instrumental to that result.

21. In Anonymous Complainant v. Englishtown Police Department, GRC Complaint No. 2022-439, decided April 29, 2025, the New Jersey Government Records Council entered an order of contempt against the Borough and Chief Cooke for failing to disclose public records reflecting communications between Cooke and then-Councilman, Defendant, Francisco, concerning the Borough's 2021 "Inaugural Englishtown Christmas Light Contest." Following a change in the law, Plaintiff was revealed as the anonymous complainant.

22. Following the resolution of the McCarthy and Anonymous Complainant matters, Defendant, Francisco, by then Mayor, promoted, without competitive examination, three EPD officers previously close to former Chief Cooke: Defendant, Martinson (Corporal to Chief of Police), Defendant, DiNicola (Corporal to Captain), and Defendant, Buckel (Corporal to Detective). While Plaintiff was the Police Commissioner, Defendant, Martinson and Defendant, DiNicola had each failed the competitive sergeant's examination twice, with scores between 51% and 61%, and Defendant, Buckel was promoted to Detective without ever sitting for a detective's examination. While Plaintiff was Police Commissioner, Defendant, Martinson and Defendant,

DiNicola were reverted from “acting sergeant” to rank of corporal, with commiserate pay changes, following their second failed examinations.

23. In 2025, at least two other Englishtown public officials resigned or otherwise went on record citing fear of Defendant, Francisco. Former Councilwoman Meghan Lewis stated in her resignation letter that she feared "for my own well-being and that of my children," and former Councilman William Lewis stated publicly that Defendant, Francisco had become "unhinged." Lauren Roth, former Chair of the Englishtown Community Development Committee, separately reported fear and harassment by Defendant, Francisco.

24. Upon information and belief, Defendant, Francisco has a documented history of publicly advocating armed violence against government officials, including a recorded statement that the purpose of the Second Amendment is "to give you the ability to shoot your government," and that citizens "should be able to own a machine gun, full-automatic, without a background check, with a tank in your driveway." On or about January 11, 2026, Defendant, Francisco posted on social media that the government "want[s] you dead, but will settle for your submission." Despite actual knowledge of these statements, former Chief Cooke approved Defendant, Francisco's own application for a permit to carry a handgun, and, upon information and belief, no ERPO or TERPO petition was ever sought against Defendant, Francisco by the Borough or the EPD.

25. Beginning in or about April 2025 and continuing through January 2026, Defendant, Francisco engaged in a sustained pattern of public harassment, stalking, and intimidation of Plaintiff and Plaintiff's family.

26. On or about April 3, 2025, Defendant, Francisco confronted and taunted Plaintiff inside a restroom at the Jersey Freeze restaurant, 120 Manalapan Avenue, Freehold Township, New Jersey, repeating the phrase "Thanks for the research, Greg!" in reference to Plaintiff's affidavits and

testimony in the McCarthy litigation, while Plaintiff was physically impaired and preparing for surgery related to a recent ulnar artery aneurysm. Plaintiff reported this incident to Freehold Township Police Detective Lieutenant Joseph Winowski, Badge #231.

27. On or about September 26, 2025, while Plaintiff was walking on Hamilton Street in Englishtown near Battle Grounds Coffee, Defendant, Francisco, accompanied by his children, intentionally intercepted Plaintiff's path and shouted, "What's up?! What's up?!" followed by, "You better keep walking," causing Plaintiff to cross the street out of fear for his safety.

28. On or about October 4, 2025, at the "Englishtown Day" street fair, Defendant, Francisco shadowed Plaintiff and his family for approximately thirty minutes and then, positioning himself behind Defendant, Martinson near Borough Hall, taunted Plaintiff by repeating, "Hi Greg! Hi Greg!" in the presence of Plaintiff's adult daughter.

29. On or about January 1, 2026, Defendant, Francisco and his party publicly confronted Plaintiff and his family as they entered the Skillet Restaurant, 300 Mounts Corner Drive, Freehold Township, New Jersey — on a day the family was preparing to attend a funeral service for a close friend of Plaintiff's daughter — repeatedly attempting to provoke a physical altercation and shouting, "I still haven't been arrested yet, Greg!" Plaintiff had to escort his visibly shaken sister-in-law to the restroom because she felt intimidated by the stares of Defendant, Francisco's party.

30. On or about January 23, 2026, Plaintiff emailed Defendant, Buckel a signed statement describing Defendant, Francisco's pattern of harassment and stalking, together with supporting exhibits, including Plaintiff's prior affidavit in the McCarthy litigation.

31. On or about January 25, 2026, Plaintiff appeared at Englishtown Borough Hall and provided an in-person, handwritten statement to Defendant, Buckel in the presence of Defendant, DiNicola. During this visit, Plaintiff observed Defendant, Francisco's vehicle in the Borough Hall

parking lot, informed Defendant, Buckel and Defendant, DiNicola, and neither officer took any responsive action. Defendant, Martinson separately entered the station, walked past Plaintiff, Defendant, Buckel, and Defendant, DiNicola without acknowledgment, and closed himself in his office.

32. During the January 25, 2026 interview, Plaintiff explicitly told Defendant, Buckel that he expected her to recuse herself and refer the matter to the Monmouth County Prosecutor's Office given her direct professional relationship to Plaintiff and to Defendant, Francisco. Defendant, Buckel did not recuse herself, and the EPD did not refer the matter to the Monmouth County Prosecutor's Office.

33. On or about January 27, 2026, Defendant, Buckel telephoned Plaintiff seeking an additional statement. Plaintiff explained that he would not return to the police station because Defendant, Francisco was frequently present there and Plaintiff did not wish to encounter him, and that he could not afford to retain counsel to accompany him.

34. On or about January 30, 2026, Plaintiff filed a sworn Certification of Probable Cause with the Municipal Court of Englishtown against Defendant, Francisco, charging Stalking (N.J.S.A. 2C:12-10), Harassment (N.J.S.A. 2C:33-4), Disorderly Conduct (N.J.S.A. 2C:33-2), and Retaliation for Past Official Action (N.J.S.A. 2C:27-5), and expressly linking Defendant, Francisco's conduct to Plaintiff's testimony in the McCarthy and Anonymous Complainant matters. Upon Plaintiff's arrival, Municipal Court Clerk Lisa Langlois stated to Plaintiff, unprompted, "I was told to expect you."

35. On or about February 3, 2026, Plaintiff separately delivered a statement regarding Defendant, Francisco's conduct to the Freehold Township Police Department and attempted to file a civil restraining order petition in Monmouth County Family Division.

36. On or about February 3, 2026, Defendant, Francisco posted the following message from his verified social media account: "LOL how are our ERPO/red flag laws doing? They say hello. Please send cops to shoot me and my family if my neighbor snitches on me because they don't like my face. I have the proof from the county prosecutor that this happened to me. They walk the streets with no consequences." This post was made two days before the TERPO described below was served on Plaintiff and referenced both ERPO/"red flag" proceedings and "the complainant" specifically.

37. On or about February 5, 2026, at approximately 11:00 a.m., Defendant, Buckel again telephoned Plaintiff seeking a further statement. Plaintiff reiterated that he would not return to the police station because of Defendant, Francisco's presence there, that he wished to be left alone, and that he understood the matter would proceed to the Monmouth County Prosecutor's Office.

38. On or about February 5, 2026, at approximately 6:30 p.m., Defendant, Buckel obtained a Temporary Extreme Risk Protective Order (Petition No. 1312-XTR-2026-000001) and an accompanying search warrant against Plaintiff from Hon. James Newman, J.M.C., sitting in the Englishtown Borough Municipal Court. The order's stated findings, in relevant part, read: "In my conversation with Gregory, he stated this needs to stop, referring to the harassment and stalking charges he submitted in a case. He seems overly excited and fixated on Daniel Francisco, the Mayor, stemming from prior service as a Councilman including a civil lawsuit that he was a witness. He provided detailed paperwork as to Daniel's action by observing Daniel's social media posts. He exhibits extreme paranoia regarding the Mayor."

39. In support of the TERPO petition, Defendant, Buckel failed to disclose to the issuing judge, among other things: (a) that Plaintiff, as Police Commissioner, had personally appointed Defendant, Buckel to her position as a full-time police officer in 2021; (b) that Plaintiff, during his

thirteen-year tenure on the Borough Council, had repeatedly voted to reappoint the same municipal court judge and court clerk who were, respectively, presiding over and staffing matters involving Plaintiff; (c) that Plaintiff had a clean criminal, domestic violence, and mental health record and had been a lawful firearms owner for thirty-eight years without incident; and (d) that body-worn camera and Ring doorbell footage in Defendant, Buckel's possession contradicted her sworn characterization of Plaintiff as "paranoid" and "excited."

40. At approximately 7:46 p.m. and again at 8:10 p.m. on February 5, 2026, Defendant, Buckel, accompanied by other EPD officers, arrived at Plaintiff's residence and repeatedly refused to state the reason for the officers' presence or to disclose any basis for probable cause when directly asked by Plaintiff.

41. At approximately 8:10 p.m., Plaintiff contacted his attorney, Robert Marchese, Esq., and placed him on speakerphone. Plaintiff's attorney identified himself to Defendant, Buckel and the other officers present as an officer of the court. Defendant, Buckel nonetheless refused to explain the basis for the warrant.

42. Plaintiff fully cooperated with the search, granting officers access to his master bedroom and unlocking a gun safe at Defendant, Buckel's instruction. Officers seized a Smith & Wesson 9mm pistol (serial #A312587), a Smith & Wesson .357 Magnum revolver (serial #S232782), a magazine, ammunition, Plaintiff's Firearms Purchaser Identification Card, and Plaintiff's Permit to Carry a Handgun.

43. Defendant, Buckel did not interview any of the three adult eyewitnesses present in the home at the time of the search — Plaintiff's spouse, Plaintiff's adult daughter, and Plaintiff's sister-in-law — did not inquire whether other weapons were present in the home, did not ask about Plaintiff's well-being, and did not summon any mental health professional or crisis responder to

the scene, notwithstanding that the TERPO was predicated on an alleged risk to Plaintiff's own safety or the safety of others.

44. Defendant, Buckel served upon Plaintiff, at approximately 8:22 p.m., only two of the four pages of the TERPO — page 3 (the search warrant) and page 4 (Notice to Respondent and Return of Service) — and did not serve pages 1 or 2, which contained the court's findings and the statutory basis for the order. The copy of page 4 served on Plaintiff contained blank, unsigned certification fields.

45. On or about February 10, 2026, Defendant, Buckel transmitted to Plaintiff's counsel, Evan Nappen, Esq., a purportedly "official" and complete four-page version of the TERPO bearing an electronic signature and a timestamp of February 10, 2026 at 11:43:41 a.m. — five days after service — which does not match, in content or execution, the incomplete version served on Plaintiff on February 5, 2026.

46. The incomplete and inconsistent service of the TERPO violated N.J.S.A. 2C:58-24 and New Jersey Attorney General Directive No. 19-19, Guideline 4(g), both of which require contemporaneous service of the complete order and the underlying petition upon the respondent.

47. On or about March 10, 2026, the matter was adjourned for four months, on consent, to allow Plaintiff to obtain an independent firearms risk assessment.

48. On or about April 14, 2026, Plaintiff underwent a psychiatric evaluation by Lee J. Suckno, M.D. Dr. Suckno found, within a reasonable degree of psychiatric certainty, that Plaintiff "does not have a diagnosable psychiatric disorder," has "absolutely no psychotic signs or symptoms," is "not a danger to self, others, or property," and "can safely and appropriately handle firearms," and that Plaintiff's possession of firearms "would not be detrimental to public health, safety, or

welfare." Dr. Suckno's findings directly contradict the "extreme paranoia" and "fixat[ion]" attributed to Plaintiff in the TERPO petition.

49. On or about June 17, 2026, upon the motion of the Monmouth County Prosecutor's Office to withdraw the application for a Final Extreme Risk Protective Order, the Superior Court of New Jersey (Hon. Jason Rockwell, J.S.C.) entered an Order Withdrawing Application for Final Extreme Risk Protective Order, and ordered the return to Plaintiff of all property seized on February 5, 2026, specifically identified in the order as: (1) one Smith & Wesson .357 Magnum caliber revolver, serial #S232782; (2) one Smith & Wesson 9mm caliber pistol, serial #A312587; (3) one magazine; (4) six .38 Special bullets; (5) eight 9mm bullets; (6) Plaintiff's Firearms Identification Card; and (7) Plaintiff's Concealed Carry Permit. Critically, the order did <u>not</u> include a stipulation of prior probable cause.

50. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of his constitutionally and statutorily protected right to keep and bear arms for more than four months, was publicly stigmatized as a danger to himself or others, was forced to incur the expense of an independent psychiatric evaluation to regain his own property, suffered emotional distress, incurred legal fees and costs, and suffered damage to his reputation in the community he had served for over a decade as an elected official.

51. Upon information and belief, the Borough's Police Commissioner and Fire Chief, Lou Sarti, a documented associate of former Chief Cooke, stated in a Borough email as early as 2022 that he would not support Plaintiff's re-election because Plaintiff had spoken out against Cooke, reflecting institutional hostility toward Plaintiff at the highest levels of Borough government well before the events described herein.

52. Upon information and belief, former Chief Cooke was subsequently criminally charged in Monmouth County with computer crime, N.J.S.A. 2C:20-25a, and with conspiracy in connection with a retail theft offense, N.J.S.A. 2C:5-2 / 2C:20-11(b), matters as to which Plaintiff is not aware of any final adjudication. These charges are alleged herein not for their truth but as further evidence of the compromised character of the command structure that Defendant, Francisco installed and that later obtained the TERPO against Plaintiff.

53. Defendant, Francisco's promotion, without competitive examination, of Defendant, Martinson, Defendant, DiNicola, and Defendant, Buckel, each personally associated with former Chief Cooke, created and entrenched a chain of command within the EPD beholden to Defendant, Francisco and hostile to Plaintiff, in violation of New Jersey Attorney General Directive 2019-2 (Internal Affairs Policy and Procedures) and Attorney General Directive 2022-14 (Public Integrity and Conflict of Interest), both of which required recusal and referral of any investigation implicating Defendant, Francisco to the Monmouth County Prosecutor's Office.

54. Defendant, Borough of Englishtown's failure to train, supervise, or discipline its officers regarding conflict-of-interest recusal obligations, TERPO procedures, and constitutionally adequate service requirements, combined with Defendant, Francisco's status as a final policymaker whose public statements and conduct directed or ratified the retaliatory use of the TERPO process against Plaintiff, render Defendant, Borough of Englishtown liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny.

## IV. CAUSES OF ACTION

**<u>COUNT I</u>**

**42 U.S.C. § 1983 — First Amendment Retaliation**

*Plaintiff v. Defendants, Francisco, Buckel, Martinson, and DiNicola*

55. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

56. Plaintiff's reporting of official misconduct, his testimony and affidavits in the McCarthy and Anonymous Complainant matters, and his filing of a sworn, statutorily-grounded Certification of Probable Cause against Defendant, Francisco constituted speech and petitioning activity protected by the First Amendment to the United States Constitution.

57. Defendants took adverse action against Plaintiff, including procuring and executing a defective TERPO and search warrant resulting in the seizure of Plaintiff's firearms and identification cards, that would deter a person of ordinary firmness from continuing to engage in protected activity.

58. The close temporal proximity between Plaintiff's protected activity and the adverse action taken against him, together with Defendant, Francisco's February 3, 2026 public statement referencing "red flag" laws and "the complainant" two days before the TERPO was served, establishes a causal connection between Plaintiff's protected activity and Defendants' conduct.

59. Defendants' actions were substantially motivated by Plaintiff's protected activity, and Defendants would not have taken the same actions absent that protected activity.

60. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages as set forth herein.

## COUNT II
**42 U.S.C. § 1983 — Unreasonable Search and Seizure**
*Plaintiff v. Defendant, Buckel*

61. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

62. Defendant, Buckel procured the TERPO and search warrant based on a petition that omitted highly material facts within her knowledge, such that the warrant was not supported by probable cause when the omitted information is considered.

63. The subsequent search of Plaintiff's residence and seizure of his firearms, ammunition, and identification cards therefore violated Plaintiff's clearly established right under the Fourth Amendment to be free from unreasonable searches and seizures.

64. No reasonable officer in Defendant, Buckel's position could have believed that the TERPO petition, as submitted, established probable cause, particularly given her personal and professional relationship with Plaintiff and her documented conflict of interest.

65. As a direct and proximate result of this unlawful search and seizure, Plaintiff has suffered damages as set forth herein.

**COUNT III**
**42 U.S.C. § 1983 — Procedural Due Process**
*Plaintiff v. Defendants, Buckel and Borough of Englishtown*

66. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

67. Plaintiff possessed a protected property interest in his lawfully owned firearms, firearms identification card, and permit to carry a handgun.

68. N.J.S.A. 2C:58-24 and Attorney General Directive #19-19, Guideline 4(g), require that a respondent be served with the complete TERPO order and the underlying petition to afford adequate notice and an opportunity to be heard.

69. Defendant, Buckel served Plaintiff with only two of the four pages of the TERPO, withheld the petition and the court's stated findings, and later produced a materially different "complete" version to Plaintiff's counsel five days after the deprivation had already occurred.

70. This incomplete and inconsistent service deprived Plaintiff of constitutionally adequate notice of the basis for the deprivation of his property and impaired his ability to challenge the TERPO in a timely manner.

71. As a direct and proximate result of this due process violation, Plaintiff has suffered damages as set forth herein.

**COUNT IV**
**42 U.S.C. § 1983 — Monell Municipal Liability**
*Plaintiff v. Defendant, Borough of Englishtown*

72. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

73. Defendant, Francisco, as Mayor of the Borough of Englishtown, is a final policymaker for Defendant, Borough of Englishtown with respect to the supervision, promotion, and direction of the Englishtown Police Department.

74. Defendant, Borough of Englishtown, through Defendant, Francisco, maintained a custom, policy, or practice of promoting officers personally loyal to Borough leadership without regard to merit or competitive examination, thereby creating a police command structure with direct personal and financial conflicts of interest in matters involving Defendant, Francisco and those who had provided evidence against his associates, including Plaintiff.

75. Defendant, Borough of Englishtown failed to train and supervise its officers regarding recusal obligations under Attorney General Directives 2019-2 and 2022-14, TERPO service requirements under N.J.S.A. 2C:58-24 and Directive #19-19, and the constitutional limits on the use of the ERPO process, notwithstanding the obvious and foreseeable risk that such failures would result in constitutional violations of the kind alleged herein.

76. The violations of Plaintiff's constitutional rights alleged herein were caused by these customs, policies, practices, and failures to train and supervise, and were ratified by Defendant, Francisco's public statements and conduct before, during, and after the events of February 5, 2026.

77. As a direct and proximate result of Defendant, Borough of Englishtown's unconstitutional customs, policies, and practices, Plaintiff has suffered damages as set forth herein.

**COUNT V**
**New Jersey Civil Rights Act, N.J.S.A. 10:6-2**
*Plaintiff v. All Defendants*

78. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

79. By the conduct described herein, Defendants, acting under color of law, interfered and attempted to interfere by threats, intimidation, and coercion with Plaintiff's exercise and enjoyment of rights, privileges, and immunities secured by the Constitution and laws of the United States and the Constitution and laws of the State of New Jersey, including his rights to free speech and petition, to be free from unreasonable searches and seizures, to keep and bear arms consistent with New Jersey law, and to due process of law.

80. As a direct and proximate result of Defendants' violations of the New Jersey Civil Rights Act, Plaintiff has suffered damages as set forth herein, and is entitled to compensatory damages, punitive damages where applicable, and an award of attorneys' fees and costs pursuant to N.J.S.A. 10:6-2(f).

**COUNT VI**
**Abuse of Process**
*Plaintiff v. Defendants, Francisco and Buckel*

81. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

82. Defendant, Francisco and Defendant, Buckel used the TERPO process — a legal process available under New Jersey law for the legitimate purpose of preventing extreme risk of harm —

for the improper, collateral purpose of retaliating against Plaintiff for his protected activity and silencing his continued reporting of official misconduct.

83. This improper purpose is evidenced by, among other things, Defendant, Francisco's public statements anticipating the use of "red flag" laws against Plaintiff, Defendant, Buckel's material omissions to the issuing judge, the defective service of the order, and the disparate treatment between Plaintiff, who had a clean record confirmed by an independent psychiatric evaluation, and Defendant, Francisco, whose own documented public statements advocating armed violence against government officials never resulted in any ERPO or TERPO petition being sought against him by the Borough or the EPD.

84. As a direct and proximate result of this abuse of process, Plaintiff has suffered damages as set forth herein.

**COUNT VII**
**Intentional Infliction of Emotional Distress**
*Plaintiff v. Defendants, Francisco and Buckel*

85. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

86. Defendant, Francisco's repeated public stalking and taunting of Plaintiff and his family, and Defendant, Buckel's procurement and execution of a defective TERPO against a former Police Commissioner she personally knew to have a clean record and to be the victim, not the perpetrator, of harassment, constituted extreme and outrageous conduct exceeding all possible bounds of decency.

87. Defendants intended to cause, or acted in reckless disregard of the substantial probability of causing, Plaintiff severe emotional distress.

88. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress.

**COUNT VIII**
**Defamation / Libel**
*Plaintiff v. Defendant, Francisco*

89. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

90. Defendant, Francisco's public social media statements referring to Plaintiff as a "local loser" who "loves larping as a liberty activist," and his public statements mocking Plaintiff's use of the criminal complaint process while referencing "the complainant" and "red flag laws" in temporal proximity to the TERPO, were false and defamatory statements of and concerning Plaintiff, published to third parties, that exposed Plaintiff to public contempt, ridicule, and reputational harm in the community he served for over a decade.

91. Defendant, Francisco made these statements with actual malice or, at minimum, with reckless disregard for their truth or falsity.

92. As a direct and proximate result of these defamatory statements, Plaintiff has suffered reputational and emotional harm and damages as set forth herein.

**COUNT IX**
**False Light**
*Plaintiff v. Defendants, Francisco and Buckel*

93. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

94. Defendants' public statements and official conduct — including Defendant, Buckel's sworn characterization of Plaintiff as "paranoid," "excited," and "fixated," and Defendant, Francisco's public taunts referencing Plaintiff's mental state and motives — placed Plaintiff before the public in a false light that would be highly offensive to a reasonable person, namely, as an unstable individual posing a danger to himself or others.

95. Defendants knew or acted in reckless disregard of the falsity of the light in which Plaintiff was placed, particularly given Defendant, Buckel's personal knowledge of Plaintiff's clean record

and Defendant, Francisco's personal knowledge that his own harassment, not any instability on Plaintiff's part, was the cause of the underlying dispute.

96. As a direct and proximate result of this conduct, Plaintiff has suffered damages as set forth herein.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Gregory W. Wojyn, by and through his undersigned counsel, respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, Borough of Englishtown, Daniel Francisco, Cynthia Buckel, Trevor Martinson, and Alex DiNicola, individually or jointly and severally, in an amount well in excess of $75,000, including all direct, compensatory, and consequential damages, plus all applicable pre- and post-judgment interest, statutory and punitive damages, reasonable attorneys' fees and costs of suit, and such other and further relief as this Honorable Court deems necessary and just, including declaratory relief.

Respectfully Submitted,

**WEISBERG LAW**

*_/s/ Matthew B. Weisberg_*

Matthew B. Weisberg, Esquire
N.J. Attorney I.D. No. 01565-2000
Gary Schafkopf, Esquire
N.J. Attorney I.D. No. 01224-2000
7 South Morton Ave.
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
mweisberg@weisberglawoffices.com
garys@weisberglawoffices.com
*Attorneys for Plaintiff*